UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISON

In re:                                          Case No.: 9:09-bk-15750-JPH
Chapter 13
WILLIAM DAVID HUTCHENS,

     Debtor.

_____/

**MEMORANDUM OF DECISION VACATING ORDER TO SHOW CAUSE AND
DETERMINING THE STATUS OF CERTAIN DOMESTIC SUPPORT OBLIGATIONS
AND A PROPERTY DIVISION AND DENYING MOTION TO DISMISS**

Before the Court are two matters for consideration: an Order to Show Cause ("Show
Cause Order") (Doc. 63) predicated on a motion (Doc. 62) filed by the Debtor, William
Hutchens (hereinafter "the Debtor"), and the Motion to Dismiss for Failure to Comply with
Order Confirming Plan ("Motion to Dismiss") (Doc. 68) filed by Janet Hutchens ("Janet").  On
April 11, 2012, the Court held an evidentiary hearing on both motions.  At the close of the
hearing, the Court found that a technical violation of the order confirming the plan had occurred,
but denied any monetary relief to the Debtor.[1]  In order to resolve the parties' remaining dispute,
the Court will need to address the following issues: 1) whether a $78,000 claim represents the
entire domestic support obligation, as that term is currently defined under § 101(14A); 2)
whether a domestic support obligation, not provided for by the plan, survives a Chapter 13
discharge, and if the obligation survives, does interest accrue on the unpaid portion; 3) whether
recent postpetition contempt proceedings Janet initiated against the Debtor in a New Hampshire

---

[1] Since the Debtor still maintains an apartment/office in New Hampshire and regularly commutes from Florida to
meet with clients and visit his children, the Debtor did not incur any extraordinary expenses.  The trip to New
Hampshire which was the subject of the order to show cause likely coincided with business and personal plans.
Accordingly, the Debtor is not entitled to damages because no actual monetary injuries were suffered.

court to collect a domestic support obligation, not being paid under the plan, falls under BAPCPA's new exceptions to the automatic stay under § 362(b)(2)(B) and (C); 4) whether a property division ordered in the state court is dischargeable under § 1328(a); and 5) whether the Debtor's Chapter 13 case should be dismissed under § 1307(c)(6) or (11) for a material default or failure to pay a domestic support obligation that first becomes due after the petition date.

## I.  Overview

Janet is the former spouse of the Debtor.  She also is the holder of two of the largest claims against the Debtor and this bankruptcy estate.  Both claims were incurred, in 2002, in the course of divorce proceedings in a New Hampshire domestic relations court.  The largest claim Janet holds is for a property settlement.  All general unsecured creditors, including Janet's property settlement claim, are to receive $0 under the plan.  Janet's other claim is for a domestic support obligation.  The domestic support obligation can be divided into two categories, one for payment of an ongoing support obligation until the parties' youngest child reaches the age of 18 and the other for payment of prepetition alimony and child support arrearages.  Under the confirmed plan, only $78,000 of a prepetition domestic support obligation has been provided for as a first priority claim.  If the Debtor completes all plan payments, that portion of the claim will be paid in full.  For whatever reason that may have existed at the time the plan was confirmed, the Debtor did not address nor provide payment for Janet's entire domestic support obligation claim. Prior to the bankruptcy filing, in certain post-divorce litigation that occurred in 2008, the Debtor was ordered by the New Hampshire court to (1) make ongoing child support payments, (2) to cure an alimony and child support arrearage, (3) to pay $14,004.06 in Janet's attorney's fees, and (4) to pay Janet $25,000 in interest as a sanction for not complying with that court's previous orders. The confirmed plan fails to mention or provide treatment for all of these

obligations. The Debtor is current on all plan payments, but ceased making postpetition child support payments to Janet in June 2011. When the support payments stopped, Janet instituted contempt proceedings in the New Hampshire court and asked this Court to dismiss the bankruptcy case. In response, the Debtor asked that this Court impose sanctions against Janet for pursuing collection of prepetition claims in state court and that his bankruptcy case be allowed to proceed undisturbed. The confluence of these events has given rise to much confusion and to the disputes now requiring resolution by this Court.

This proceeding arises in a case referred to this Court by the Standing Order of Reference entered in this District and is determined to be a core proceeding pursuant to 28 U.S.C. § 157(b)(1), (b)(2)(A), (b)(2)(B), (b)(2)(I), (b)(2)(O) and § 1334(b). The Court is authorized to enter final judgment in this proceeding. The following constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.

## II.  Factual Background

On April 18, 2002, the Debtor and Janet were divorced in a New Hampshire domestic relations court. The final divorce decree incorporated the parties' Permanent Stipulation and Uniform Support Order which allocated the property division. The Permanent Stipulation and Uniform Support Order also provided Janet with alimony and child support payments for the couple's minor children, among other items. See attachment to Janet Hutchens' Deposition (Doc. No. 114).

Under the terms of the Permanent Stipulation, the Debtor was ordered to pay alimony of $5,000 per month beginning on May 1, 2002, for a period of six (6) years or until Janet remarried. See Paragraph 9 of Permanent Stipulation. With respect to child support, Paragraph 4 of the Permanent Stipulation provides as follows:

3

4.      <u>Uniform Support Order:</u>

A      Uniform Support Order is attached hereto and incorporated herein by reference.  William [the Debtor] shall pay child support in the amount of Nine Thousand Dollars ($9,000.00) per month beginning on May 1, 2002.  The guidelines are not applicable in this case due to the high income of the parties and the property settlement and alimony provisions hereunder.  There will not be an automatic three (3) year review.  Said review shall be deferred until 2008.

\* \* \*

The Uniform Support Order referenced by the Permanent Stipulation also provides:

4.      Obligor [the Debtor] is ORDERED to PAY THE FOLLOWING AMOUNTS:

**CHILD SUPPORT:**  $<u>2,646.00</u> per <u>month</u>
Arrearage of $_____ as of <u>see #16</u>

**SPOUSAL SUPPORT (ALIMONY)**:  $ <u>2,000.00</u> per <u>month</u>
Arrearage of $_____ as of <u>see #16</u>

Uninsured medical expenses shall be paid in the following percentage amounts:
Obligor <u>50%</u> Obligee <u>50%</u> Other _____%

Lastly, paragraph 16 of the Uniform Support Order states:

16.      Variation to standing order (specify paragraph #), additional agreement or order of the court:

Petitioner [the Debtor] shall make monthly additional payments of $500.00 to be applied first to child support arrearages, and the alimony arrearages.  Petitioner's total monthly support obligation is $5,146.00.

See Attachment to Janet Hutchens' Deposition (Doc. No. 114).

Six years after the parties' divorce, in 2008, they were back before the New Hampshire court.  At the 2008 hearings, Janet asserted that the Debtor had violated the terms of the divorce decree and should be held in contempt for nonpayment of alimony, child support, and the property settlement ordered by that court.  During those proceedings, the New Hampshire court also conducted a review of the current financial circumstances of the parties to determine

whether the alimony and child support payments (provided in Paragraph 4 of the Permanent Stipulation incorporated by reference in the divorce decree) should be modified.

On July 18, 2008, the New Hampshire court issued an order (the "July 2008 Order") addressing the matters raised at the contempt hearings. In the July 2008 Order, the state court determined that the Debtor had a present obligation to Janet totaling $466,750. Specifically, the July 2008 Order stated that the Debtor owed Janet $49,072 for unpaid alimony, $340,250 for unpaid property settlement installment payments, $3,200 for his 50% share of uninsured medical expenses, $28,259 to reimburse Janet for 90% of the cost of their son's ACL surgery because of his failure to maintain health insurance for the minor children, $15,977 to reimburse Janet for college expenses, $25,000 as interest to sanction the Debtor for not making payments to Janet as previously ordered, and $4,992 in child support arrearages.

The July 2008 Order also set forth a payment schedule for the Debtor to cure his arrearage and for making ongoing child support payments. Pursuant to the July 2008 Order, the Debtor was to make a $50,000 payment within 90 days of the order being entered and to then make monthly payments in the amount of $5,500 until the $466,750 arrearage was cured. The July 2008 Order further broke down the $5,500 monthly payments. Importantly, it determined that $2,646 was the Debtor's ongoing child support payments and $2,854 would be applied to the $466,750 arrearage. When the Debtor's child support obligation ended, the July 2008 Order required him to continue paying $5,500 a month until the entire $466,750 arrearage was cured. The New Hampshire court held in abeyance any decision on Janet's request for attorney's fees until a later date. In a subsequent order issued in October 2008 (the "October 2008 Order"), the New Hampshire court also directed the Debtor to pay Janet $14,004.06 in attorney's fees in addition to the $466,750 arrearage.

Sometime after the New Hampshire court issued the July and October 2008 Orders, the Debtor had a conversation with Janet informing her that, because of a significant decline in his financial circumstances, he could not afford the $5,500 monthly payments. The parties then agreed orally that the Debtor could make monthly payments in an amount less than $5,500 without Janet waiving the deficiency for the full amount. The amount agreed upon by the parties was $3,000 per month. After their conversation, the Debtor began making minimum payments of $3,000 each month. On at least seven occasions before filing for bankruptcy, the Debtor made payments to Janet in an amount slightly higher than $3,000, resulting in a $4,500 surplus towards the prepetition arrearage (Claim No. 6, Itemization).

A year later, however, on July 22, 2009, the Debtor filed for bankruptcy protection against his creditors under Chapter 13 (Doc. No. 1). Janet subsequently filed a proof of claim in the case for a domestic support obligation in the amount of $78,000 (Claim No. 6). In addition, Janet filed an objection to the Debtor's plan stating that she was the holder of a priority claim for a domestic support obligation for that same amount (Doc. No. 33). On September 17, 2010, the Debtor filed an amended plan which provided for payment of Janet's entire claim of $78,000 as a priority debt under § 507(a)(1). Subsequently, on April 6, 2011, the Court issued an order confirming the Debtor's plan and resolving any objections (Doc. No. 55).[2]

The Debtor has made all required payments under the confirmed plan. In addition to the plan payments, the Debtor continued to make monthly payments directly to Janet in accordance with the July 2008 Order from the New Hampshire court, but at the reduced amount of $3,000 as the parties' had orally agreed. However, in June 2011, the Debtor stopped making the $3,000

---

[2] This case has an unusually lengthy pre-confirmation history before this Court. As noted, the Chapter 13 petition was filed on July 22, 2009, but the plan was not confirmed until April 6, 2011, some 18 months later. The case was first transferred from the Honorable Alex Paskay to the Honorable David H. Adams on or about September 15, 2010. Judge Adams presided over the April 2011 confirmation hearing. The case was transferred to the undersigned judge on June 13, 2011.

minimal payments to Janet, asserting that the New Hampshire court's child support order had terminated because the parties' youngest child had reached age 18.  Unhappy with the Debtor's decision to stop the monthly $3,000 payments, and after consulting with her New Hampshire attorney, Janet instituted contempt proceeding in the state court against the Debtor.  In response, the Debtor filed the Motion to Show Cause in bankruptcy court contending that Janet violated the confirmation order by seeking to have him held in contempt (Doc No. 62), which resulted in the Order to Show Cause (Doc. No. 63) being issued by this Court.  Janet later responded by filing the Motion to Dismiss the Chapter 13 case (Doc. No. 68).

### III.  Legal Analysis

The parties do not dispute that Janet holds an allowed unsecured first priority domestic support obligation claim in the amount of $78,000 and that the plan provides for full payment of that claim within five years.  The dispute in this case, however, is focused more on the impact of the bankruptcy proceedings upon Janet's remaining claims against the Debtor for domestic support obligations, not provided for under the plan, and a property settlement incurred in the divorce.

We begin the analysis with a discussion of the two kinds of domestic support obligations present in this case, as defined by 11 U.S.C. § 101(14A), on the one hand, consisting of a substantial prepetition obligation for unpaid child support, alimony, attorney's fees and a court imposed sanction and, on the other hand, an ongoing postpetition obligation for child support.

**A.       Domestic Support Obligations are Nondischargeable**

As amended by BAPCPA, the Code now provides a new definition for a domestic support obligation:

> (14A) The term "domestic support obligation" means a debt that accrues before, on, or after the date of the order for relief in a case under this title, including interest that accrues on that debt as provided under applicable nonbankruptcy law notwithstanding any other provision of this title, that is--
>
> (A) owed to or recoverable by--
>
>> (i) a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative; or
>>
>> (ii) a governmental unit;
>
> (B) in the nature of alimony, maintenance, or support (including assistance provided by a governmental unit) of such spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated;
>
> (C) established or subject to establishment before, on, or after the date of the order for relief in a case under this title, by reason of applicable provision of--
>
>> (i) a separation agreement, divorce decree, or property settlement agreement;
>>
>> (ii) an order of a court of record; or
>>
>> (iii) a determination made in accordance with applicable nonbankruptcy law by a government unit; and
>
> (D) not assigned to a nongovernmental entity, unless that obligation is assigned voluntarily by the spouse, former spouse, child of the debtor, or such child's parent, legal guardian, or responsible relative for the purpose of collecting the debt.

11 U.S.C. § 101(14A).

In determining whether a debt is in the nature of support, courts look to federal bankruptcy law and not state law.  See In re Strickland, 90 F.3d 444, 446 (11th Cir. 1996); In re Blackwell, 432 B.R. 856, 862 (Bankr. M.D. Fla. 2010).  However, state law can provide

guidance in determining whether a debt is in the nature of support.  See Strickland, 90 F.3d at 446; In re Bowers, 357 B.R. 663, 667 (Bankr. M.D. Fla. 2006).  In making this determination, courts need to look past the label assigned to a debt and determine whether that debt is in the nature of alimony or support.  In re Benson, 441 F. App'x 650, 651 (11th Cir. 2011) (citing Cummings v. Cummings, 244 F.3d 1263, 1265 (11th Cir.2001)).

Based on the foregoing, the Court makes the findings compiled in the table below.  These figures represent a breakdown of the property division and domestic support obligations arrearages that the Debtor owed to Janet on the date that the petition was filed:

Domestic Support Obligations:

| | |
|---|---|
| Alimony Arrearage | $49,072.00 |
| Uninsured Medical Expenses | $3,200.00 |
| ACL Surgery | $28,259.00 |
| College Expenses | $15,977.00 |
| Interest/Sanction | $25,000.00 |
| Child Support Arrearage | $4,992.00 |
| Attorney's Fees | $14,004.06 |

| | |
|---|---|
| Domestic Support Obligation Total | $139,199.06[3] |
| Property Division: | $337,055.00[4] |

---

[3] The July and October 2008 Orders determined that as of June 1, 2008, the domestic support obligation arrearage was $140,504.06.  However, as illustrated by the itemization attached to Janet's proof of claim, the Debtor made thirteen payments to Janet prior to the Debtor filing for Chapter 13 (Claim No. 6, Itemization).  Of the thirteen payments made to Janet, seven were in excess of the amount necessary to satisfy the Debtor's ongoing support obligation and resulted in an excess of $4,500 that must be attributed to the total arrearage found in the July and October 2008 Orders.  Since the domestic support obligation arrearage of $140,504.06 represents 29% of the total arrearage of $480,754.06, 29% of the $4,500 ($1,305) shall be attributed to the domestic support obligation arrearage, reducing the domestic support obligation arrearage to $139,199.06 as of the petition date.

[4] As of June 1, 2008, pursuant to the July 2008 Order, the property division arrearage was $340,250.00.  Since the property division award of $340,250 represents 71% of the total arrearage, 71% of the $4,500 excess paid by the Debtor prepetition shall be attributed to the property division arrearage ($3,195), reducing this arrearage to $337,055.00 as of the petition date.

### 1.   The Prepetition Domestic Support Obligation Priority Claim

It appears that on the date that the petition was filed, Janet held a prepetition domestic support obligation claim in the amount of $139,199.06.  Janet, however, has taken litigation positions in this case, which expressly demonstrate her agreement to accept less than full value of the domestic support obligation that she was owed on the date the petition was filed.  As noted, Janet submitted a proof of claim for only $78,000 (Claim No. 6).  Moreover, Janet filed an objection to confirmation of the Debtor's original Chapter 13 plan, asserting that the plan needed to be amended to provide payment of her claim as a priority domestic support obligation under § 507(a)(1), reiterating that the total value of her claim was only $78,000, rather than $139,199.06 or some higher value (Doc. No. 33).  In sum, Janet had more than ample notice and actively participated in the adjudication and treatment of her claim under the Debtor's plan, including determining the claim amount and its priority.  After her objection was resolved, Janet did not further contest confirmation and did not appeal the order confirming the plan.

Normally, a creditor holding an *allowed* unsecured claim for a domestic support obligation that, as of the date of the petition, is owed to or recoverable by a former spouse is given first priority among all other unsecured creditors.  See § 507(a)(1).  Further, § 1322(a)(2) requires that "a plan shall provide for full payment, in deferred cash payments, of all claims entitled to priority under § 507," unless the holder of a particular claim agrees to a different treatment of such claim.  In order to agree to a different treatment, "the claim-holder must make an express affirmation of consent."  Dep't of Revenue v. Randolph (In re Randolph), 273 B.R. 914, 918 (Bankr. M.D. Fla. 2002).  Merely failing to object to a proposed Chapter 13 plan, which does not provide for full payment of a priority claim, does not constitute express affirmation. See e.g., Fort v. Florida Dep't of Revenue (In re Fort), 412 B.R. 840, 859 (Bankr. W.D. Va. 2009).

At confirmation, Janet was entitled to full payment of her entire prepetition domestic support obligation under the plan.  See § 1322(a)(2).  The confirmed plan, instead, provides for a different treatment of Janet's claim—in this case for payment of far less than the full value of the prepetition domestic support obligation that was owed when the petition was filed.  However, the rule is well-established that upon confirmation, a Chapter 13 plan is given *res judicata* effect even if the plan does not comply with the Code.  See e.g., Burnett v. Burnett (In re Burnett), 646 F.3d 575, 581 (8th Cir. 2011); In re Wright, 461 B.R. 757, 760 (Bankr. N.D. Iowa 2011).  Thus, while the case law in this area suggests that the holder of a priority claim must expressly agree to have her claim treated differently from what the Code requires in order for the plan to be confirmed, if a plan is confirmed without such treatment, then § 1327 provides that the confirmed plan binds the creditor,[5] regardless of whether that creditor has objected to, accepted, or rejected the plan.  Travelers Indem. Co. v. Bailey, 129 S.Ct. 2195, 2205 (2009); In re Bateman, 331 F.3d 821, 830 (11th Cir. 2003); see also, United Student Aid Funds, Inc. v Espinosa, 130 S.Ct. 1367, 1376 (2010) ("The Bankruptcy Court's order confirming [the debtor's] proposed plan was a final judgment, from which [the creditor] did not appeal.  Ordinarily, 'the finality of [a] Bankruptcy Court's orders following the conclusion of direct review' would 'stan[d] in the way of challenging [their] enforceability.'") (quoting Travelers, 129 S.Ct. at 2198-98) (internal citations omitted).

Under these circumstances, we conclude that the Debtor's Chapter 13 plan must be given *res judicata* effect.  Janet is bound by the terms of the confirmed plan and is only entitled to payment of $78,000 as an allowed unsecured first priority claim for the domestic support

---

[5] See § 1327(a) ("The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan.").

obligation amounts owed prepetition.  If the Debtor completes the plan, only $78,000 of the Debtor's total domestic support obligation which was due prepetition will be discharged. However, the Debtor's personal liability for unpaid back child support and alimony arrearages -- domestic support obligations -- are not affected by a Chapter 13 discharge and cannot be discharged in bankruptcy.  See §§ 1328(a) and 523(a)(5).  The unpaid portion of the prepetition domestic support obligation arrearages, like any other nondischargeable debt, may be collected as a personal liability of the debtor.  See In re Penaran, 424 B.R. 868, 879 (Bankr. D. Kan. 2010) (It is well established that § 1328(a)'s "full compliance" Chapter 13 discharge excepts any debt of a kind specified in 523(a)(5) for a domestic support obligation.); In re Witaschek, 276 B.R. 668 (Bankr. N.D. Okla. 2002); see also In re Kreps, 2011 WL 2749584, at *2 (Bankr. C.D. Ill. 2011) ("As one court has also aptly noted, "[a]lthough BAPCPA created a new definition for domestic support obligation, section 101(14A), and a differentiated priority for support debts owed to a governmental unit, section 507(a)(1), it did not alter the rule of decision applicable here.").

For these reasons, the Court holds that the unpaid arrearage for back alimony and child support established under the July 2008 Order, (less $78,000 to account for the payments made under the plan) projected at $61,199.06[6] is nondischargeable under 523(a)(5).  Whatever discharge the Debtor receives will not absolve him of the duty to pay the balance on this obligation and the interest that accrues on it under the applicable New Hampshire law at some later time.  See In re Burnett, 646 F.3d 575, 582 (8th Cir. 2011) ("We find the Ninth Circuit's

---

[6] After the debtor completes his Chapter 13 plan he will have paid $78,000.00 of the prepetition $139,199.06 domestic support obligation arrearage which includes a $49,072.00 alimony arrearage, $3,200.00 for uninsured medical expenses, $28,259.00 for ACL surgery, $15,977.00 for college expenses, $4,992.00 in child support arrearages, $25,000.00 as a sanction and $14,004.06 in attorney's fees. The $61,199.06 identified here represents the projected unpaid balance on the prepetition domestic support obligation that will remain after all payments under the plan have been made.  This figure does not include any interest that might accrue under New Hampshire law.

decision in *Foster v. Bradbury (In re Foster)*, on which the BAP principally relied, persuasive. The Ninth Circuit 'agree[d] with the weight of authority . . . that interest on nondischargeable child support obligations, like interest on nondischargeable tax debt, continues to accrue after a Chapter 13 petition is filed and is not dischargeable.'") (quoting <u>Foster v. Bradbury (In re Foster)</u>, 319 F.3d 495, 497 (9th Cir. 2003)); <u>see also In re Kreps</u>, 2011 WL 2749584, at *2 (Bankr. C.D. Ill. July 13, 2011) ("To the extent child support arrearages are nondischargeable in Chapter 13, the arrearages continue to accrue interest as provided by state law. The postpetition interest is the liability of the debtor personally, not of the estate, is not subject to discharge in the case and is collectible thereafter. The *res judicata* effect of confirmation under section 1327(a) has no effect on a debtor's continuing liability for payment of the unmatured interest that accrues postpetition.").

### 2.      The Postpetition Domestic Support Obligation Claim

To the extent that the Debtor has any ongoing postpetition domestic support obligations, the confirmed plan does not, and could not affect those obligations. <u>See In re Burnett</u>, 646 F.3d 575, 582 (8th Cir. 2011). The July 2008 Order states only that the Debtor must make child support payments in the amount of $2,646, per month, "so long as that obligation remains." The July 2008 Order does not provide the exact date on which that obligation terminates. The Debtor contends that the parties' only minor child turned age 18 in March 2011 and finished high school in June of that same year. At no time during the hearing did Janet contest that assertion. Given these facts, the Court infers that the Debtor's ongoing child support obligation must have terminated in June 2011 and that the Debtor is not now, nor was he ever delinquent, postpetition, on the $2,646 payments that the New Hampshire domestic relations court directed him to make

as an ongoing child support obligation.  If, however, such an "obligation remains" under the state court support order, the automatic stay will not apply; Janet is free to immediately petition the New Hampshire court for recovery of the obligation through withholdings of income from the Debtor that exceed the monthly payments set forth under the plan by means of wage garnishments or other methods of collection, or by requiring that the Debtor pay the ongoing obligation from property whether or not it is property of the estate.  See In re Burnett, 646 F.3d at 583.

### 3.  Collection of Unpaid Prepetition Domestic Support Obligation

As noted, the Debtor filed a motion (Doc. No. 62) seeking to prevent Janet from instituting contempt proceedings in New Hampshire to collect on the unpaid domestic support obligations that remain.[7]  The Debtor relies on the confirmation order and the language of § 1327, which provides that a confirmed plan "binds the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan." Ostensibly, the Debtor argues that child support obligations, which had been ongoing on the petition date, have terminated and that while he is making payments under the plan he should be protected from having to pay any other support obligations provided under the New Hampshire Court's July  2008 and October, 2008 Orders. Janet relies on § 362 and the new exceptions prescribed under BAPCPA to counter the argument.

The collection of a domestic support obligation falls under BAPCPA's new exceptions to the automatic stay.  See § 362(b).  Section 362(b)(2)(A)(ii) provides that

---

[7] The Court has determined that the Debtor owed a domestic support obligation of $139,199.06 on the date of the petition, $78,000 of which is provided for under the plan.  Accordingly, that leaves a balance of $61,199.06 as an unpaid prepetition domestic support obligation which the Court has already concluded is a nondischargeable domestic support obligation under 523(a)(5).

the filing of a Chapter 13 petition does not operate as a stay "for the establishment or modification of an order for domestic support obligations."  Additionally, § 362(b)(2)(B) excepts from the stay acts to collect a domestic support obligation from property that is not property of the estate, and (C) excepts acts to withhold "income that is property of the debtor or property of the estate for payment of a domestic support obligation under a judicial or administrative order or statute."  However, once a Chapter 13 plan has been confirmed pursuant to § 1327 it becomes binding on all creditors, including holders of prepetition domestic support obligations.  See e.g., In re Bateman, 331 F.3d 821, 830 (11th Cir. 2003) (Once a domestic support obligation claimant has become bound by the confirmed plan, the claimant must accept only the payments under the Chapter 13 plan and cannot initiate collection proceedings on the prepetition obligation); See In re Rodriguez, 367 Fed.Appx. 25, 28 (11th Cir. 2010) cert denied, __ U.S. __ 131 S.Ct. 128, 178 L.Ed.2d 34 (2010),  In re McGrahan, 459 B.R. 869, 874 (B.A.P. 1st Cir. 2011) (Once the plan is confirmed, "the creditor's rights and interests are defined within the boundaries of the plan, and proceedings that are inconsistent with the confirmed plan are improper, even if they fall within an exception to the automatic stay."); Fort v. Florida Dep't of Revenue (In re Fort), 412 B.R. 840, 850 (Bankr. W.D. Va. 2009) (holding that the state of Florida's post confirmation continuation of a wage garnishment order in effect against the debtor's income, to the extent that it sought payment of the debtor's prepetition domestic support obligation, violated the provisions of § 1327(a)).

Based on the foregoing, the Court holds that Janet is bound by the terms of the confirmed plan and that even though the automatic stay does not prohibit her from pursuing collection against the Debtor in New Hampshire state court, those activities are barred by the terms of the confirmation order.  Janet must wait for the bankruptcy case to

be closed or dismissed before she may attempt to collect the projected unpaid prepetition domestic support obligation of $61,199.06 and any interest that accrues on that figure under New Hampshire law.

**4.      Sanctions and Attorney's Fees Incurred are Nondischargeable**

Expenses incident to the enforcement of a domestic support obligation are nondischargeable.  In re Blackwell, 432 B.R. 856, 862 (Bankr. M.D. Fla. 2010); In re Wilson, 380 B.R. 49, 55 (Bankr. M.D. Fla. 2006).  Janet incurred legal fees incident to the enforcement of this domestic support obligation in the amount of $14,004.06.  The New Hampshire court directed the Debtor to pay this amount in the October 2008 Order. The state court also found that the attorney's fees and a $25,000 sanction were reasonably related to the Debtor's contemptuous behavior.  By virtue of the New Hampshire court's pronouncement in its July and October 2008 Orders, those expenses became incident to the enforcement of a domestic support obligation.  Because these expenses were incurred in connection with the enforcement of a domestic support obligation, the Court finds that the attorney's fees fall within the ambit of § 523(a)(5) and are therefore nondischargeable.

Having resolved the issues surrounding the domestic support obligations the Court now turns to the issue of whether the $337,055 property settlement[8] is dischargeable under § 1328(a).

---

[8] The $340,000 property division found in the July 2008 Order has been reduced by 71% of the $4,500 ($3,195) the Debtor paid prepetition attributable to the prepetition arrearage.

### B.    Property Settlement is Dischargeable Under § 1328(a)

A property settlement or division incurred in the course of a divorce does not fall under the new definition of a domestic support obligation.    See §§ 101(14A) and 523(a)(15).[9]  Moreover, the law is now well-settled that a claim for a property settlement arising from divorce proceedings can still be discharged in a Chapter 13 case if a debtor makes all the required payments under a plan and receives a full compliance discharge under § 1328(a).  See e.g., In re Pylant, 467 B.R. 246, 251 (Bankr. M.D. Ga. 2012); In re Faircloth, 2011 WL 6941489, at *2 (Bankr. M.D. Tenn. Dec. 30, 2011); In re Nelson, 451 B.R. 918, 925 (Bankr.D.Or., 2011); In re Kennedy, 442 B.R. 399, 402-03 (Bankr. W.D. Pa. 2010); In re Young, 425 B.R. 811, 818 (Bankr. E.D. Tex. 2010).  Accordingly, if the Debtor completes all the payments under the plan,[10] Janet's $337,055 property settlement claim will be discharged.[11]

Next, the Court will address the Motion to Dismiss under § 1307(c)(6) and (11).

---

[9] Section 523(a)(15) provides that a discharge under § 1328(b):

> . . . does not discharge a debtor from a debt to a spouse, former spouse, or child of the debtor and not of the kind described in paragraph (5) [of section 523(a)] that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, or a determination made in accordance with State or territorial law by a governmental unit.

[10] In this case, since Janet (as an unsecured creditor by virtue of her property division claim) filed an objection to confirmation, § 1325(b) requires the Debtor (as an above median-income debtor) to either propose a plan that runs for five years or provide full payment to unsecured creditors.  Since the Debtor is not providing full payment to unsecured creditors, the plan must run for five years and during that window, Janet can, if the Debtor's financial circumstances improve,  move for a post-confirmation plan modification to provide for a distribution to unsecured creditors.  See In re Tennyson, 611 F.3d 873 (11th Cir. 2010).

[11] This is not a case where the Debtor is seeking a "hardship discharge."  Under a "hardship discharge" none of the debts incurred in the course of a divorce proceeding would be dischargeable, including a property division.  See § 1328(b); In re Pylant, 467 B.R. 246, 251 n.6 (Bankr. M.D. Ga. 2012); In re Kennedy, 442 B.R. 399, 401 (Bankr. W.D. Pa. 2010); In re Uylaki, 09-61157-13, 2009 WL 2982941, at *3 (Bankr. D. Mont. Sept. 14, 2009); In re Petersen, A07-00481-DMD, 2008 WL 8642629, at * 1 (Bankr. D. Alaska July 23, 2008); In re Knox, 07-11082, 2007 WL 1541957, at *3 (Bankr. E.D. Tenn. May 23, 2007).

### C.    Motion to Dismiss Debtor's Chapter 13 Case

Janet argues that the Debtor's case should be dismissed under § 1307(c).  Under § 1307(c) of the Bankruptcy Code, a bankruptcy court, at the request of a party in interest, for cause, may convert or dismiss a chapter 13 case, whichever is in the best interests of creditors and the estate.  In support of her argument, Janet relies upon 11 U.S.C. § 1307(c) (6) and (c)(11) which, in relevant portion, provide:

> **(c)** . . . [t]he court may convert a case under this chapter to a case under chapter 7 of this title, or may dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause, including—

> **. . .**

> **(6)** material default by the debtor with respect to a term of a confirmed plan;
> **. . .**

> **(11)** failure of the debtor to pay any domestic support obligation that first becomes payable after the date of the filing of the petition.

Janet propounds three theories for the dismissal of the Debtor's case under § 1307 (c)(6) and (11) based upon the same set of operative facts.  Under the first, Janet contends that the Debtor's case should be dismissed under § 1307(c)(6) because of his decision in June 2011 to stop the monthly support payments of $3,000 she had been receiving under the New Hampshire court's July 2008 Order.  Janet argues that this stoppage of payments constituted a material default under the terms of the plan.  Janet also contends that by stopping those payments the Debtor failed to pay an ongoing domestic support obligation -- child support in violation of § 1307(c)(11).  Finally, Janet argues that the lapse in coverage of health insurance for the parties' minor child and the Debtor's refusal to repurchase the insurance as he had been directed in the July 2008 Order also constituted a failure to pay an ongoing postpetition which warrants dismissal of the case.

The Debtor, needless to say, opposes dismissal on the grounds that he is not in material default with respect to any of the terms of the plan.   Further, the Debtor contends that the decision to stop the $3,000 monthly payments to Janet did not violate his ongoing child support obligation to Janet because the parties' youngest child turned age 18 in March 2011 and finished high school in June 2011, thereby terminating that commitment.   Finally, the Debtor testified that the additional, roughly $350 he had been paying Janet, postpetition, above the $2,646 in child support obligation made up for the health insurance premiums since he had not maintained the insurance as directed by the July 2008 Order.   According to the Debtor, the Motion to Dismiss under § 1307(c)(6) and (11) is without merit.

1.    **<u>Material Default</u>**

Dismissing or converting a case for a material default under § 1307(c)(6) is a discretionary matter and is appropriate when a debtor is unable to cure a default and the plan cannot be modified to make completion feasible.   <u>In re Grant</u>, 428 B.R. 504, 506-507 (Bankr. N.D. Ill. 2010).   Courts also have found material defaults when debtors have failed to make payments as required under confirmed plans and when debtors fail to complete confirmed plans within five years.   <u>See e.g., In re Grant</u>, 428 B.R. 504, 507 (Bankr. N.D. Ill. 2010); <u>In re Hubbard</u>, 259 B.R. 186, 199 (Bankr. N.D. Ala. 2000).

Section 1307(c)(6) does not apply in this case since the Debtor's failure to continue the $3,000 support payment each month, does not constitute a material default under the terms of the Debtor's confirmed plan.   The plan provides that general unsecured claims are receiving a distribution of $0.   The plan further provides that Janet's priority claim in the amount of $78,000 will be paid in full at the conclusion of sixty months.   During the first twelve months, the Debtor made all the plan payments in the amount of $2,759 as required by the plan.   In order to

19

complete the plan, the Debtor will need to continue making monthly payments of $1,239 for the remaining forty-eight months.  If the Debtor completes all the plan payments he will receive a discharge of the domestic support obligation, but only to the extent provided for by the plan.  See § 1328(a).  Because the plan provides that Janet will receive a distribution for the "allowed unsecured priority claim" in the amount of $78,000, the Debtor is current on all plan payments and his failure to make a $3,000 per month support payment does not constitute a material default with respect to a term of the confirmed plan within the meaning of § 1307(c)(6).  If anything, the Debtor may have missed a child support payment, which, if true, bears serious consequences that may ultimately prevent him from obtaining a discharge, however the plan is not affected.  See §§ 1325(a)(8) and 1328(a).[12]  None of the terms of the plan have been breached and the provisions of § 1307(c)(6) are not implicated.  Accordingly, the Motion to Dismiss under § 1307(c)(6) will be denied.

The Court will next address Janet's contention that the Debtor's case should be dismissed under 11 U.S.C. § 1307(c)(11).

---

[12] Under the BAPCPA amendments, a debtor required by a judicial order to pay a domestic support obligation must certify that all amounts payable have been paid in order to receive a discharge under Chapter 13.  See §1328(a);  In re Runfola, 06-11140-BFK, 2011 WL 6752179, at *1 (Bankr. E.D. Va. Dec. 22, 2011) ("Under Section 1328(a), Debtors are required to certify to the Court that they are current on all domestic support obligations, before they can receive their discharge."); In re Fort, 412 B.R. 840, 859 (Bankr. W.D. Va. 2009) ("Should the Debtors complete their payment obligations, they will be entitled to a discharge upon satisfying all other statutory requirements as provided in § 1328. One of those requirements is a certification that all domestic support obligations incurred up to the time of the certification have been paid, 'including amounts due before the petition was filed, but only to the extent provided for by the plan[.]'"); In re Sims, 06-62756-MGD, 2008 WL 7842067, at *1 (Bankr. N.D. Ga. May 1, 2008) ("[Section 1328(a)] effectively requires that one of two things to happen in order for a debtor to receive a discharge: (1) a debtor with a domestic support obligation must certify that payments under the obligation are current or (2) the court must determine that no domestic support obligation exists.")

2.      **Failure to Pay Domestic Support Obligation First Payable After Petition Date**

Janet also contends that the Debtor's case should be dismissed under § 1307(c)(11). According to Janet, the Debtor failed to pay a domestic support obligation that first became payable after the petition date.  As evidence, Janet points to the fact that the Debtor, in June 2011, stopped making $5,500 payments—reduced by the parties agreement to $3,000, per month, under the New Hampshire court's July 2008 Order.  The Debtor, on the other hand, objects to dismissal on the basis that his decision to stop payments to Janet does not constitute a failure to pay a domestic support obligation that first becomes payable after the date of the filing of the petition, within the ambit of § 1307(c)(11).

a.      **Prepetition Domestic Support Arrearage**

As earlier discussed, the arrearage that the New Hampshire court directed the Debtor to pay in the July 2008 Order is a domestic support obligation for back child support, alimony, college expenses, reimbursement to Janet for uninsured medical expenses, and interest and attorney's fees as a sanction against the Debtor for not complying with a previous order, all of which accrued prepetition.  As noted, the July 2008 Order stated that as of June 1, 2008, there was an arrearage of $49,072 in unpaid alimony and $4,992 in back child support.  The New Hampshire court also determined that the Debtor owed $15,977 in college expenses based upon the Debtor having the financial ability to contribute towards his children's education expenses, but did not do so.  Further, the July 2008 Order stated that the Debtor owed Janet $3,200 for his 50% share of uninsured medical expenses and $28,259 to reimburse Janet for 90% of the cost of their son's ACL surgery.  The July 2008 Order further indicates that the Debtor was being made to pay these expenses because of his failure to maintain health insurance for their minor children. Finally, the New Hampshire Court, in the July and October 2008 Orders determined that because

of the Debtor's substantial contempt in failing to make payments to Janet as previously ordered he would pay Janet's attorney's fees and $25,000 in interest as a sanction.

Section 1307(c)(11) provides that a debtor's case must be dismissed if the debtor fails "to pay any domestic support obligation that *first* becomes payable after the date of the filing of the petition."    Emphasis added.    However, § 1307(c)(11) is not concerned with prepetition arrearages.  See 11 U.S.C. § 1307(c)(11).  As suggested by a leading Chapter 13 treatise, support obligations that are due and have not been paid prior to the petition date do not first become payable after the petition date for purposes of § 1307(c)(11).  Keith M. Lundin & William H. Brown, CHAPTER 13 BANKRUPTCY, 4TH EDITION, § 540.1, at ¶8, Sec. Rev. Mar. 29, 2006, www.Ch13online.com.   Judge Lundin instead suggests that "'[b]ecomes payable' in new § 1307(c)(11) perhaps means something different from 'accrues.'"  Keith M. Lundin & William H. Brown, CHAPTER 13 BANKRUPTCY, 4TH EDITION, § 529.1, at ¶16, Sec. Rev. Mar. 29, 2006, www.Ch13online.com.

Under the circumstances, the Court concludes that the domestic support obligation arrearages identified here accrued prepetition and first became payable at that time.  Indeed, the New Hampshire Court's July 2008 Order identified that the Debtor had a present obligation to Janet for the identified domestic support obligations and the Debtor was ordered to pay them prior to the date the petition was filed.  Since these domestic support obligations first became payable *prior* to the Debtor filing his bankruptcy petition, the Debtor's failure to make postpetition payments associated with these obligations does not constitute cause to dismiss under § 1307(c)(11).   The domestic support obligations implicated did not "first become payable" after the petition was filed.  They were debts that were already payable on the date that the petition was filed.  Thus, the Motion to Dismiss is without merit, to the extent that it purports

to assert that the Debtor failed "to pay any domestic support obligation that first becomes payable after the date of the filing of the petition." See § 1307(c)(11).

### b.    Failure to Maintain Postpetition Health Insurance Premiums

Janet also argues that there is cause to dismiss the Debtor's case under § 1307(c)(11) because of the Debtor's refusal to maintain health insurance for the parties' youngest child during the pendency of the bankruptcy case. Janet testified that the Uniform Support Order required the Debtor to maintain the children's health insurance and that the Debtor failed to comply with this obligation. Janet further testified that she provided health insurance for the youngest child at a cost of around $350 a month and that she repeatedly asked the Debtor to provide the insurance. She contends that this omission constitutes a failure by the Debtor to pay a domestic support obligation that first became due postpetition. In response, the Debtor asserts that he made postpetition child support payments of not less than $3,000, per month until June 2011 when the parties' youngest child graduated high school and reached the age of 18. The Debtor also testified that he believed that the amount he paid Janet each month in excess of $2,646, which was at a minimum $350, was going towards the youngest child's health insurance. According to the Debtor's testimony, he could never get Janet to consent verbally to this arrangement.

Resolution of this issue is complicated by the fact that the parties' had, prior to the bankruptcy case being filed, made an agreement which required that the Debtor only pay $3,000, rather than $5,500 under the July 2008 Order. However, the filing of the Chapter 13 petition affected that arrangement and altered the parties' rights as it pertains to the Debtor's responsibility to pay the prepetition domestic support obligations and property division arrearages. As noted, the July 2008 Order, broke down the $5,500 monthly payments. In issuing

the July 2008 Order, the New Hampshire Court was dealing with both substantial arrearages and prospective relief in connection with ongoing child support.  The July 2008 Order specified that $2,646 was the Debtor's ongoing child support payments and $2,854 would be applied to the remaining $466,750 arrearage, which also included an unpaid child support obligation, alimony and a property division.[13]

There is no dispute that the New Hampshire Court's July 2008 Order only required support payments of $2,646 and that the Debtor maintain health insurance for the parties' minor child.  There also is no dispute that the Debtor made uninterrupted $3,000, payments each month until June 2011, when, apparently, the parties' youngest child reached age 18 and graduated high school.  Against this back drop, Janet testified that she provided health insurance postpetition for the child at a cost of around $350, per month after the Debtor failed to purchase the insurance.  Given these facts, it is apparent that the approximately $350 per month that the Debtor paid to Janet in addition to $2,646 in child support covered the health insurance premiums Janet was being forced to pay.   As a practical matter, the Debtor satisfied the postpetition support obligation which became payable after the date of the filing of the petition by designating the additional support payments as ones for the insurance premiums, even though he did not actually purchase the health insurance himself.   Accordingly, Janet's domestic support obligation claim as it relates to unpaid health insurance premiums, appears to be based solely on the arrearages which accrued prepetition under the New Hampshire Courts July 2008 Order.  The obligation under review here, however, does not appear to be based on a failure by the Debtor to maintain or pay for health insurance for the parties' minor child, postpetition.  Thus, even if Janet's Motion to Dismiss is able to overcome the first hurdle, namely that the insurance premium

---

[13] When the Debtor's child support obligation ended, the July 2008 Order required him to continue paying $5,500 a month until the entire $466,750 arrearage was cured.

obligation must *first* become payable after the date of the filing of the petition, the Court concludes that cause does not exist to dismiss the case under § 1307(c)(11).

The Debtor made payments of $350 in addition to a child support of $2,646 each month after the petition was filed until June 2011 when the parties' youngest child finished high school and reached 18 years of age. These payments were designated for the health insurance premiums which Janet conceded that she maintained at a cost of $350. As such, the Debtor may not have complied explicitly with the New Hampshire Court's Order to maintain the health insurance, but it cannot be said that he failed to pay a domestic support obligation – payment of the insurance premiums -- that first became due after the date of filing the petition. The Debtor paid the additional $350 to cover the health insurance premiums until that obligation ended in June 2011. Therefore, the Motion to Dismiss under § 1307(c)(11) also is without merit.

### IV.  Conclusion

For the foregoing reasons, the Motion to Dismiss (Doc. No. 68) will be **DENIED**. The Debtor's bankruptcy case will not be dismissed under § 1307(c)(6) or (11). A separate Order denying the Motion to Dismiss will be entered forthwith.

The Court finds that Janet violated the order confirming the plan but has determined that the Debtor is not entitled to damages. The motion seeking to hold the Debtor in contempt (Doc. No. 62) is **OVERRULED** and the Order to Show Cause (Doc. No. 63) is **VACATED**. An order to this effect will be entered.

Upon completing all payments under the plan, the Debtor will receive a full compliance discharge. The discharge will include a $78,000 prepetition domestic support obligation claim provided for under the plan. However, the Debtor will not be discharged from any nondischargeable debts, in particular, any unpaid portion of a prepetition domestic support

obligation in the amount of $61,199.06 (which includes prepetition alimony and child support arrearages, attorney's fees of $14,004.06 and a $25,000 court ordered sanction) owed to Janet pursuant to the July and October 2008 Orders.  The Debtor will also not receive a discharge from any interest which may accrue on these amounts under New Hampshire law while the bankruptcy case is pending until the claims have all been paid in full.

If the Debtor completes all payments under the plan, any remaining debts that are not in the nature of alimony or child support incurred in the course of the divorce proceeding will be discharged, including the $337,055 property settlement or property division claim held by Janet. See § 1328(a).

Accordingly, it is

DONE AND ORDERED in Chambers at Tampa, Florida, on   October 04, 2012

_____
JEFFERY P. HOPKINS
United States Bankruptcy Judge

Copies to be provided via CM/ECF service.